IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

ZACHARY SALAS, :
:
      Plaintiff :
:
:
VS. : 1 : 03-CV-32 (WLS)
:
JAMES WETHERINGTON, et al., :
:
:
      Defendants. :

**RECOMMENDATION**

      Presently pending in this § 1983 action is the defendants' Motion for Summary Judgment. The undersigned notified the plaintiff of the filing of the defendants' motion, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of his receipt of the court's order. The plaintiff has filed a response to the defendants' motion, arguing the merits of his claim(s) and asking that this matter be dismissed without prejudice.

*Background*

      The events giving rise to this lawsuit took place during the plaintiff's confinement at Autry State Prison ("ASP") between October and November 2001. Named as defendants herein are Jim Wetherington, Commissioner of the Georgia Department of Corrections, Wendy Thompson, Warden at ASP, Deputy Warden Gregory McLaughlin, and Dwayne Mathis, a correctional officer at ASP. In his complaint, the plaintiff alleges that in October 2001, he was placed in administrative segregation, or solitary confinement, in the J-Building at Autry State Prison. In the sole remaining claim herein, he maintains that "during this whole period of time that I was locked down, the fire alarms kept going off and stayed on for excessive amounts of

time causing a permenant [sic] damage to my right ear drum."[1]  In regard to this claim, the plaintiff's complaint does not contain any specific allegations naming any specific defendants.

*Standard of review*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Van T. Junkins & Assoc. v. U.S. Industries, Inc., 736 F.2d 656, 658 (11th Cir. 1984).

As the parties moving for summary judgment, the defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991).

In their Motion for Summary Judgment, the defendants argue that their alleged actions, or lack of action, are not sufficiently harmful to establish deliberate indifference to a serious threat of harm, that the majority of plaintiff's claims rely on a theory of vicarious liability, and that the plaintiff cannot show an affirmative causal connection between the defendants and the alleged

---

[1]This suit was originally filed in the Northern District of Georgia.  The Honorable Julie Carnes dismissed certain claims and, despite ruling that the plaintiff had failed to state a claim in regard to suffering permanent hearing loss due to the fire alarm at the prison, ultimately allowed this claim to go forward, based on plaintiff's *pro se* status and the possibility that the plaintiff might adduce evidence of his hearing loss.  The court later ordered the matter transferred to the Middle District of Georgia.

injury.  In support of their motion, the defendants have submitted the affidavits of Stacey Webb, Deputy Warden of Security at ASP, Dr. E. Robin Bohannon, audiologist, and Derris Delk, Fire Chief for ASP, as well as pertinent portions of the plaintiff's medical records.

*Deliberate indifference*

The deliberate indifference standard has both a subjective and objective component; "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994).  The defendants "may be held liable under the Eighth Amendment for denying humane conditions of confinement only if [they know] that inmates face a substantial risk of serious harm and [disregard] that risk by failing to take reasonable measures to abate it." *Id.* at 1984.  Thus, to establish an Eighth Amendment violation, and therefore survive the defendants' summary judgment motion, the plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The defendants set out that the plaintiff was confined at ASP from September 18, 2001, until July 24, 2003, and was held in administrative segregation in the J-1 Building from October 4, 2001 to November 7, 2001, and again from November 27, 2001 to December 26, 2001.  The affidavits supporting the defendants' summary judgment motion establish that whenever a fire alarm is activated at ASP, the maintenance department is immediately notified and an official is sent to investigate the reason for the alarm and the necessary response.  Although fire alarms are

3

occasionally activated by an inmate setting a fire in his cell, by creating smoke, or by breaking a fire sprinkler head, the prison log books for the J-building show no evidence of a fire alarm sounding during the time period in question. Deputy Warden Stacey Webb testified in his affidavit that "[i]f the alarm had sounded, it would be entered into the log book, and there were no such entries." Webb affidavit at ¶ 9. However, Webb also states that "the alarm may have sounded and not noted." Id. Fire Chief Derris Delk testified in his affidavit that the Autry Fire Department is immediately notified once a fire alarm is activated, and that in most cases, the process of silencing the alarm "take[s] less than approximately 10 or 15 minutes, and often just a few minutes." Delk affidavit at ¶ 4. Delk further testified that during the period of his tenure as Fire Chief at ASP, he knows of no incidences of the fire alarm being activated with no immediate response from the Fire Department personnel "to determine the cause of the fire alarm activation, and to silence the alarm if not needed." Id. at ¶ 5.

The defendants also argue that the fire alarms in the building(s) in question are of a decibel level considered safe without hearing protection. They support this argument with the affidavit of Dr. E. Robin Bohannan, an audiologist, who testified that he understood the fire alarms at ASP to sound at 103 dB, a level considered to be safe without the use of hearing protection by the Occupational Safety and Health Administration.

Finally, the defendants maintain that the plaintiff suffered from hearing loss and ringing in his ears prior to being housed in segregation and that the type of hearing loss the plaintiff suffers from is not caused from continued exposure to loud noise(s). They support these assertions with the affidavit testimony of Dr. Bohannon, who treated the plaintiff beginning in March 2002. Dr. Bohannon states that "[a]t the time the inmate entered [ASP] he suffered from hearing loss and

complained of tinnitus and ringing in the ear." Bohannon affidavit at ¶ 6. Dr. Bohannon concludes that "Mr. Salas has a bilateral sensorineural hearing loss that has increased in low frequencies of the right ear. This type of hearing loss is inconsistent with hearing loss caused by continued exposure to loud noise." Id. at ¶ 13.

The plaintiff does not provide any evidence or testimony to rebut the summary judgment showing set forth by the defendants herein, other than his conclusory affidavit statements, including his assertion that "[w]hile in lock down the fire alarms would sound off for excessive amounts of time. Specifically, inmates Murphy, Winsdale Strickland and about four other inmates were frequently busting the fire sprinklers and setting fires intentionally trying to kill themselves." Plaintiff's affidavit at ¶¶ 2,3. The plaintiff makes no allegation in his complaint or showing in response to the defendants' summary judgment motion that the defendants knew of yet disregarded a serious risk of harm in the form of activated fire alarms in the J-1 building. The court notes as well that "[s]ubjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare." Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994).

Moreover, the plaintiff makes no allegation or showing that the defendants knew of yet disregarded any serious medical condition concerning plaintiff's hearing. The plaintiff has failed to rebut the affidavit testimony of Dr. Bohannon that any hearing damage the plaintiff sustained did not occur as a result of loud noises such as the fire alarm bells. In his affidavit, the plaintiff admits to having suffered from hearing loss and ringing in his ears prior to the alleged incidents in 2001. Although he maintains that the condition worsened following the periods of excessive ringing of the fire alarms in segregation, the plaintiff has offered no evidence to support this

5

claim.

"[A] prison official cannot be found liable under the Eighth Amendment's prohibition of cruel and unusual punishment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also draw the inference." Farmer, 114 S. Ct. at 1979. The plaintiff has failed to establish that the conditions he describes at ASP deprived him of a "minimal civilized measure of life's necessities" or that the defendants were deliberately indifferent to any such condition, either by failing to act in the face of obvious excessive risk of harm or by failing to act once actually possessed of the subjective knowledge of any serious medical need. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The plaintiff's allegations remain unsupported by credible evidence and are largely conclusory, falling far short of overcoming the defendants' summary judgment showing.

To the extent that the plaintiff is attempting to hold the individually named defendants liable on a theory of *respondeat superior* or vicarious liability, his claims must fail. "It is axiomatic, in Section 1983 actions, that liability must be based on something more than a theory of *respondeat superior*." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). There has been no showing herein of any personal involvement or other causal connection between the individually named defendants and the alleged incidents underlying plaintiff's claims of deliberate indifference.

Accordingly, it is the recommendation of the undersigned that the defendants' Motion for Summary Judgment be **GRANTED**. In light of the age of this case and the advanced nature of

the proceedings herein, it is the recommendation of the undersigned that the plaintiff's Motion to Dismiss certain defendants and/or this action be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to these recommendations with the Honorable W. Louis Sands, Chief United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 18th day of November, 2005.

/s/ *Richard L. Hodge*
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

asb